**U.S. & INTERNATIONAL TRAVEL & TOURS, INC., an Indiana corporation, Plaintiff,**

v.

**TAROM—S.A., S.C. COMPANIA NATIONALA DE TRANSPORTURI AERIENE ROMANE, d/b/a Romanian Air Transport, a Romanian corporation, Defendants.**

**No. 99 C 7680.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 26, 2000.

Damon E. Dunn, Daniel Thomas Graham, Steven F. Poe, Levin & Funkhouser, Ltd., Chicago, for U.S. International Travel & Tours, Inc., an Indiana corporation, plaintiffs.

Warren J. Marwedel, Shari L. Friedman, Marwedel, Minichello & Reeb, P.C., Chicago, for Tarom—S.A., S.C. Compania Nationala De Transporturi Aeriene Romane, a Romanian corporation dba Romanian Air Transport, defendants.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff U.S. & International Travel & Tours, Inc. has filed a two-count complaint against defendant Tarom—S.A., S.C. Com-

pania Nationala De Transporturi Aeriene Romane, d/b/a Romanian Air Transport (the Romanian national airline), alleging: (1) a quantum meruit claim for "accounting services" provided to defendant; and (2) breach of a sales agreement.

Defendant has brought a motion to compel arbitration and to stay these proceedings pending arbitration in Bucharest, Romania. Although plaintiff objected to this motion in open court based on the public policy exception to the enforcement of arbitration agreements, plaintiff now agrees that given the arbitration clause in the sales agreement, Count II should be arbitrated. Plaintiff objects to sending Count I to arbitration, however. Plaintiff states that it does not object to staying the entire action, including Count I, pending arbitration of Count II, but reserves the right to present Count I to this court when the arbitration proceedings are concluded. Defendant replies that Count I should be submitted to arbitration along with Count II.

■ As an initial matter, defendant contends that the arbitrator, and not this court, should decide whether Count I should be arbitrated. Defendant offers no support for this proposition. Contrary to defendant's argument, the Supreme Court has held that as long as the parties do not have an agreement to submit the arbitrability question itself to an arbitrator, "the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 944, 115 S.Ct. 1920. Because there is no evidence that the parties agreed to arbitrate arbitrability in the instant case, this court will decide the arbitrability question.

■ The arbitration clause in the Sales Agreement in the instant case reads:

"Any disagreement between the contracting parties deriving from the conclusion, interpretation or the performance of the agreement or in connection with it ... will be submitted for settlement to the Arbitration Court of the Chamber of Commerce and Industry in Bucharest ...." "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). The presumption of arbitration applies with special force to cases such as this one in which the arbitration clause is quite broad. *Id.*

■ The Seventh Circuit has concluded that when an arbitration clause states that it covers all disputes "arising out of" an agreement, it "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress International, Ltd.,* 1 F.3d 639, 642 (7th Cir.1993). The language of the arbitration clause in the instant case is even broader than that in *Sweet Dreams,* in that it states that all disputes that arise "in connection with" the Sales Agreement will be arbitrated. *See, e.g., Hytran Corp. v. Aktiengesellschaft,* 1995 WL 443926, *5 (N.D.Ill. July 24, 1995) (concluding that the language "in connection with" is broader than the language in the arbitration clause at issue in *Sweet Dreams* ).

Plaintiff does not offer any argument in support of its contention that Count I is not arbitrable. Defendant argues that Count I is arbitrable because it arises in

connection with the Sales Agreement. In Count I, plaintiff alleges that it performed valuable "accounting services" for defendant, including: making payments to defendant's vendors and suppliers; negotiating contracts for defendant, including contracts with hotels to house defendant's flight crews and catering contracts; and assisting defendant in resolving disputes with third parties. Although plaintiff states in the complaint that these accounting services were "completely independent of its rights and obligations under the Sales Agreement," at least some of these services are clearly covered by the Sales Agreement. In the Sales Agreement plaintiff not only agreed to sell airline tickets for defendant, but also agreed "to undertake any effort meant to increase the good reputation of [defendant] within the territory of the [plaintiff]," including "relations with government authorities, . . . press, public, and any other persons" and to represent and assist defendant in negotiations with all authorities, governmental or otherwise, who exert jurisdiction or control over plaintiff's territory. These provisions certainly cover "resolving disputes with third parties," one of the accounting services plaintiff allegedly performed.

Moreover, all of the accounting services plaintiff alleges arguably have their genesis in the Sales Agreement, in that plaintiff began performing these services for defendant only after the parties had entered into the Sales Agreement. *See, e.g., Sweet Dreams,* 1 F.3d at 643 (holding that a tort claim for interference with business relations had its genesis in a contract because the formation of the contract marked the beginning of those business relations).

Given the vagueness of plaintiff's allegations in Count I, the broad duties plaintiff assumed under the Sales Agreement, and the Supreme Court's admonition that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the court concludes that both Count I and Count II fall within the ambit of the arbitration clause.

For the foregoing reasons, the court grants defendant's motion to compel arbitration. Because this matter is already pending before an arbitrator in Romania, "the Court can see no reason to retain jurisdiction and allow this action to languish on the docket in Chicago." *Merchant v. Weissman,* 1997 WL 695674, at *5 (N.D.Ill. Nov.3, 1997). "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) ("Because it determined that all of [the plaintiff's] claims were subject to arbitration, the district court acted within its discretion when it dismissed this case with prejudice."). Rather than stay these proceedings pending arbitration, the court dismisses this case without prejudice to plaintiff reinstating the case, if necessary, after arbitration is completed.